Per Curiam.

Two indictments were filed against the defendant Kirkup in the Extraordinary Special and Trial Term of the Supreme Court of Suffolk County. Indictment No. 7256 charges him with having committed the crime of conspiracy contrary to section 580 (subds. 1, 4, 6) of the Penal Law. Indictment No. 7258 charges him with having violated section 1864 of the Penal Law.
The evidence adduced before the Grand Jury would justify a petit jury finding that Albert Freistadt, a pharmacist operating a retail drugstore in Suffolk County, and his successors in interest, had, over a period in excess of four years, ordered drugs from pharmaceutical houses ostensibly for the use of the Suffolk County Home but actually for sale to the public in Freistadt’s store; that, as a consequence of that scheme, Freistadt *212 and Ms successors obtained the drugs at an institutional price which was substantially lower than the price payable by retail druggists; and that, as a favor to Freistadt, his former employer and friend of twenty-five years’ standing, defendant Kirkup, Commissioner of Public Welfare of the County of Suffolk, had arranged for Freistadt to use the County Home as a “ front ” for Freistadt’s purchase of drugs to be sold to the public.
Subdivisions 1, 4 and 6 of section 580 of the Penal Law provide:
“ If two or more persons conspire:
1. To commit a crime; or
# # #
4. To cheat and defraud another out of property, by any means wMch are in themselves criminal, or which, if executed, would amount to a cheat, or to obtain money or any other property by false pretenses; or,

* * *

6. To commit any act injurious to the public health, to public morals, or for the perversion or obstruction of justice, or of the due administration of the laws,
Each of them is guilty of a misdemeanor.”
In our judgment, the Grand Jury properly concluded that all the elements of the crime of obtaining property by false pretenses were present and that defendant Kirkup conspired with the retail druggists to commit that crime. A petit jury may rightfully find that the retail druggists by virtue of the aid given them by defendant Kirkup — and it is obvious that they needed his aid to succeed -in their scheme — determined to induce the drug companies to part with possession and title to large quantities of drugs at a price considerably below the market selling price and value to retail druggists, by falsely representing that the drugs were intended for use in the County Home, and that the drug companies acting and relying on those misrepresentations, knowingly false when made, were induced to part with the goods at the prices at which sales were made to public institutions. A person who, with criminal intent, returns less than the correct change on being handed a bill in payment of a purchase is guilty of larceny (see 52 *213 C. J. S., Larceny, § 34). Equally guilty of larceny is the person who, with criminal intent and by false representation of fact relied on by the seller, obtains more than that to which he knows he would be entitled as a purchaser in his business as retailer were he to tell the truth. To hold otherwise would be to permit every one purchasing for State, County, city or town to arrange for the purchase, by a retailer, of anything from automobiles to shoe laces at institutional prices and for the public servant or the retailer, or both, to profit thereby.
The Appellate Division held that no larceny had been shown inasmuch as there was no proof that the drug houses were cheated because there was no evidence adduced to demonstrate that the companies lacked knowledge of the operation of the scheme to obtain the institutional discount. Indeed, the Appellate Division went further and held that knowledge of the salesmen of the transfer of the drugs from the institution to the retail druggists was imputable to their companies. We cannot agree.
Freistadt himself thought it necessary to evolve a scheme in order to obtain the discounts, for he testified that cashiers’ checks were used so that the drug companies would not know that the drugs were intended for his pharmacy and he saw to it that the drugs were ordered ostensibly for the use of the County Home and were delivered to the County Home. That he succeeded in deceiving the companies seems clear since representatives from the three drug companies with the largest volume of shipments involved testified, in effect, that the companies would not have sold the drugs at institutional rates had they known they were for Freistadt’s use. Contrary to the holding of the Appellate Division, it cannot be said, as a matter of law, that the knowledge of the drug company salesmen is imputable to the companies. It is likely that the salesmen benefited from the scheme and would not wish to inform any official of their companies of the fraud being practiced. A salesman for Pfizer specifically stated that he would look good as a salesman as a result of the scheme. “ ‘When the agent * * * is engaged in a scheme to defraud his principal, the presumption [that notice to him is notice to his principal] does not prevail, because he cannot in reason be presumed to have disclosed that which * * * would expose and defeat his *214 fraudulent purpose/ (Henry v. Allen, 151 N. Y. 1. See, also, Brooklyn Distilling Co. v. Standard D. & D. Co., 193 N. Y. 551; Carlisle v. Norris, 215 id. 400, 414; Credit Alliance Corp. v. Sheridan Theatre Co., 241 id. 216).” (Granite Bond & Mtge. Corp. v. Hutchins, 225 App. Div. 412, 413.) Whether the salesmen were co-conspirators was a question of fact for the Grand Jury.
Accordingly, the indictment for conspiracy must be reinstated.
The indictment against Kirkup for violating section 1864 of the Penal Law must also be reinstated. That section provides, in part: “A person who, being or acting as a public officer or otherwise, * * * wrongfully obtains, receives, converts, disposes of or pays out or aids, or abets another in obtaining, receiving, converting, disposing of, or paying out any money or property, held, owned, or in the possession of the state, or of any city, county or village, or other public corporation, or any board, department, agency, trustee, agent or officer thereof, is guilty of a felony”.
While it may well be that the County never owned the drugs in question because the County never ordered them, it can hardly be gainsaid that the goods were either “ held ” or “in the possession of” the County. When delivery of the drugs was accepted by the County Home it gained physical possession of them with the right to exclude all others having no better right than itself to the property. The drug companies intended to pass title to the drugs to the County Home. While mere acceptance of the goods may not have rendered the County liable for the cost of the drugs since the County Home had not ordered them, the home was not free to give the drugs away to a third person. By accepting delivery of drugs addressed to it and intended for it but not ordered by it, the home became a gratuitous bailee with the right, and we think duty, to retain possession until it could determine who the manufacturers intended should have the drugs. When Kirkup interfered with the County’s possession of the goods he violated section 1864 of the Penal Law, or so a jury could rightfully find. It could also find, under the conspiracy indictment, that defendant conspired to violate section 1864 of the Penal Law.
The order of the Appellate Division should be reversed and the indictments reinstated.
*215 Chief Judge Conway and Judges Dye, Fboessel and Burke concur in Per Curiam opinion; Judge Fuld concurs as to Indictment No. 7256 for violation of section 580 of the Penal Law but dissents and votes to affirm as to Indictment No. 7258 for violation of section 1864 of the Penal Law; Judges Desmond and Van Voorhis dissent and vote to affirm as to both indictments on the memorandum opinion of the Appellate Division.
Order reversed, etc.