Bertram Harnett, J.
Does a default judgment dismissing a counterclaim in a small claims action in the Nassau County District Court operate to bar further litigation in the State Supreme Court on the issues raised in that pleading? Motions to dismiss this action upon the ground of res judicata raise this unusual point.
We rule below that there is such a res judicata. We rest this view in the need to end litigation after full and fair opportunity to be heard, and in the need to curtail procedural attenuations which sap the vitality of the litigative process.
A. THE CAUSES ASSERTED NOW AND BEFORE
64 West Park Avenue Corp. owns property of its namesake address in Long Beach, New York. It was a defendant in a small claims action brought on May 26, 1972 in the Second District Court of Nassau County, Lynbrook Part, by Dr. Norman L. Kanfer, a tenant, for return of a security deposit. In its answer dated July 10, 1972, “ 64 ”, the landlord, asserted a two-pronged counterclaim against Dr. Kanfer, Peter Alpern, Esther Alpern, and Parlong Realty Corp. It sought damages of $10,000 in its claim that the tenants improperly removed, fixtures from the building, and $5,000 because of claimed property destruction by the tenant.
11 64 ” failed to appear at trial, and, on December 19, 1972, a default judgment was entered against it granting in the primary action a money award representing the security deposit and dismissing the counterclaim, with costs. Its motion to vacate *1021 the default was denied by District Court order dated February 14, 1973 as being without merit. No appeal was taken from either the judgment or order. The security deposit was returned, with interest, as directed.
Then, in December, 1973, this action was commenced in the Supreme Court by ‘1 64 ” against the same Parlong Realty Corp., Esther Alpern, Peter Alpern, and Norman L. Kanfer. The complaint makes three claims. However, the second and third causes of action seek exactly the same $10,000 and $5,000 for the same improper removal and destruction claimed in the District Court action. The first cause of action claims $10,200 in damages upon oral misrepresentation by defendants Parlong and Alpern, who are alleged to have stated that the security on deposit from Dr. Kanfer was $200, instead of1 the $400 actually deposited, and that the fixtures belonged to them, when in fact Dr. Kanfer owned them.
B. DISMISSAL UPON BBS JUDICATA
Parlong and the Alperns move now to dismiss the first cause of action. Dr. Kanfer moves to dismiss the second and third causes of action. Both motions contend that the prior District Court counterclaim dismissal is a res judicata bar to the claims now made.
1. COUNTBBCLAIM IN SMALL CLAIMS COURT
For purposes of determining res judicata effect, a judgment rendered upon a counterclaim is no different than one made upon a primary claim in a complaint. (Granite Bond & Mtge Corp. v. Hutchins, 225 App. Div. 412; American Capital Corp. v. Duralab Equip. Co., 39 Misc 2d 1057.) It is a vehicle for securing affirmative relief upon a separate claim which, though not compulsory, is permitted for reasons of judicial economy to be asserted in the primary action as opposed to a separate lawsuit. The parties in this action and in the third-party action in the District Court are identical.
Bes judicata, meaning “a matter adjudged”, Black’s Law Dictionary, 1470 (4th ed., 1951), is the conclusive establishment of legal relations between parties by virtue of a final judgment. Bes judicata effect is given to judgments of limited as well as general jurisdiction. (Hallock v. Dominy, 69 N. Y. 238.) A judgment then acts to bar a subsequent action raising the same causes of action. (Schuylkill Fuel Corp. v. Nieberg Realty Corp., 250 N. Y. 304; Perry v. Dickerson, 85 N. Y. 345.) Identity of causes in two actions of which one has proceeded to judgment is determined by whether a different judgment in the remaining *1022 action would impair the rights adjudged in the first. (Andrews v. Merrywood Country Club, 28 A D 2d 865.)
2. CAUSES OF ACTION COMPABED
The first cause of action here, claiming fraud and misrepresentation, was not the cause of action set forth by “ 64 ” in its prior District Court counterclaim. There was no monetary damage claimed for oral misstatements, indeed no falseness or deceit claimed at all. Only a “personal representation” by the Alperns that the leasehold at 64 West Park Avenue “ would be made part of the said contract of sale ” was alleged without any further mention. No reference is made to the amount of the security deposit, nor to the ownership of fixtures. There being then a lack of identity in causes of action, the judgment dismissing the counterclaim is not a res judicata bar to the first cause of action here. (Bell v. Herzog, 39 A D 2d 813.)
In contra-distinction, the second and third causes of action here are virtual carbon copies of the District Court counterclaim. The underlying grounds alleged, conversion of fixtures and tenant damage to premises upon vacating, are identical in both pleadings. The dollar damage claimed is exactly the same. No additional factors or elements were added in the later claim. There is some slight amplification now in detail of fixture removal and building destruction, but not beyond the reasonable inference of the prior counterclaim, and, in any event, included within the scope of the bill of particulars served in response to Dr. Kanfer’s demand in the District Court. A judgment in favor of plaintiff here would inevitably impair rights accruing to Dr. Kanfer from the prior judgment of dismissal.
3. ELEMENT OF DEFAULT
The only remaining issue is whether the element of default in the prior judgment prevents its having res judicata impact. In New York, a default judgment may preclude another suit on the same cause of action even where no detailed inquest is held prior to entry. (Parker v. Hoefer, 2 N Y 2d 612, cert. den. 355 U. S. 833; Mitchell v. Insurance Co. of North Amer., 40 A D 2d 873; see Spindell v. Brooklyn Jewish Hosp., 35 A D 2d 962, affd. 29 N Y 2d 888; 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5011.12.) In applying the doctrine to default judgments, the courts discourage the bringing of separate litigation based on claims already asserted and determined. (See 9 Carmody-Wait 2d New York Practice, § 63:225.) They seek to minimize the prospect of inconsistent judgments. Where just cause of excuse *1023 or undue harshness can he shown, they seek to channel post-judgment litigation into the forum where pretrial preparation has already taken place. (See Restatement, Judgments, § 59.)
One commentator has said that giving res judicata effect in such circumstances “ remind [s] the practitioner that a default judgment is not a weakling under New York law; it carries equal weight with a post-trial judgment not only for enforcement purposes in the case itself but for estoppel purposes in future cases”. (D. Siegel, Practice Commentaries in McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 3215:26, p. 881.)
4. CIRCUMSTANCES OF DEFAULT
There is a potential harshness in giving such substantial import to a judgment lacking a full trial on the merits. It may be considered desirable that the circumstances of the prior action be reviewed to determine the nature of the disputation, the pretrial presence of the defaulting party, and its adversary, and the opportunity provided for trial. (Cf. Stewart v. Keller, 219 App. Div. 833.)
Here, a review of the District Court file reveals that “ 64 ” had substantially participated in the action before trial. After a formal reply to the counterclaim was made, a demand for a bill of particulars was served by Dr. Kanfer, who then moved to preclude for failure to comply with the demand. After the motion was granted, conditionally, “ 64 ” filed its four-page bill of particulars with an 11-page supporting exhibit giving explicit details of the $10,000 fixture removal, and $5,000 tenant damage claims. A motion for summary judgment and dismissal of the counterclaim was made and denied with a memorandum decision dated August 17, 1972 holding that issues of fact prevented summary disposition of the $10,000 and $5,000 claims. The case was marked ready for trial on November 1,1972, and Dr. Kanfer, his attorney and trial counsel, the attorney for the other counterclaim defendants, and two out-of-State witnesses, were present. Upon the nonappearance by “ 64 ” and its attorney, the District Court Judge adjourned the case to November 29, 1972, marking it peremptorily against “64”. On November 29, 1972, upon the second failure to appear by “ 64 ” and its attorney, and with the same entourage present as before, the court granted a default judgment upon the affidavits and pleadings filed. More than two months afterwards and after entry of a formal judgment, a motion to vacate the default was made, to no avail. No appeal followed. Instead, over a year after the default judgment was directed, “ 64 ” started a totally new action in this court with *1024 the identical causes of action dismissed by the District Court.
This history makes clear the necessity for allowing res judicata effect of the judgment of dismissal in the District Court. Substantial resources of the court, attorneys, and people were expended there. Pretrial exploration was thorough. Opportunity to appear was ample. (See Wyle v. Wallen, 43 A D 2d 670.) And, the lack of any effort by “ 64 ” to appeal after denial of its motion to reopen speaks for itself. To now permit de novo litigation of these causes of action would import a reward for delay and court switching, and negate the entire proceedings in the District Court. (See Argyle Assoc. v. Kool Air Systems, 23 Misc 2d 470.)
It is true that CPLR 3216 states that an order of dismissal for failure to prosecute, like a voluntary dismissal without prejudice, shall not be taken as a judgment on the merits, “ unless the order specifies otherwise ”. (Cf. Headley v. Noto, 22 N Y 2d 1, 3-4.) But, the default judgment here, after joinder of issue, case calendaring, and repeated trial notices, is different. When a default occurs so late in the litigation, the judgment obtained is “on the merits ”. The only way to demonstrate that trial commitments must be met is to strictly enforce them, and, after a certain grace allowance as here was provided the counterclaim plaintiff in the first trial adjournment, to enter judgment in default. Otherwise, the courts and other persons who promptly appear are taken advantage of, indeed penalized, for adhering to the rules.
C. CONCLUSION
Accordingly, the motion by defendants Alpern and Parlong to dismiss the first cause of action is denied, and the motion by defendant Kanfer to dismiss the second and third causes of action is granted.
Short form order signed.